## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

PATRICIA A. FIORE, individually and as
Administrator ad Prosequendum of the ESTATE OF
JOHN P. FIORE,

Plaintiffs,

v.

ALLIANCE HC 11 LLC d/b/a ANDOVER
SUBACUTE AND REHABILITATION II;
ALLIANCE HC 11 LLC d/b/a WOODLAND
BEHAVIORAL AND NURSING CENTER; CHAIM
SCHEINBAUM; LOUIS SCHWARTZ; ANDOVER
SUBACUTE AND REHABILITATION II;
WOODLAND BEHAVIORAL AND NURSING
CENTER; JANE DOE NURSES 1-50; JANE ROE
NURSES, TECHNICIANS, CAN'S AND
PARAMEDICAL EMPLOYEES 1-50; JOHN DOE
PHYSICIANS 1- 50; RICHARD ROES 1-10; JANE
DOE DIETICIANS 1-50; ABC CORPORATION AND
ABC PARTNERSHIP (the aforesaid names being
fictitious and their true names being unknown),

Defendants.

</td>
<td>

Civil Action No. 22-04474 (FLW)

**ORDER**

</td>
</tr>
</table>

**THIS MATTER** having been opened to the Court by way of a motion to remand this

matter to New Jersey Superior Court filed by Plaintiff Patricia A. Fiore, individually and as

Administrator ad Prosequendum of the Estate of John P. Fiore ("Plaintiffs"), against Defendants

Alliance HC 11 LLC d/b/a Andover Subacute and Rehabilitation II ("Andover"); Alliance HC 11

LLC d/b/a Woodland Behavioral And Nursing Center ("Alliance"); Chaim Scheinbaum

("Scheinbaum"); Louis Schwartz ("Schwartz"); Andover Subacute and Rehabilitation II

("Andover Subacute"); Woodland Behavioral And Nursing Center ("Woodland") (collectively,

the "Defendants"); the Court having considered the parties' submissions without oral argument,

pursuant to Rule 78 of the Federal Rules of Civil Procedure, makes the following findings:

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.  In this case, Plaintiffs allege that John P. Fiore, a 74-year-old former resident of a nursing home located in Andover, New Jersey died from COVID-19 because of Defendants' negligence.

2.  On March 29, 2022, Plaintiffs filed this case in the Superior Court of the State of New Jersey in Ocean County. The Complaint asserts the following five causes of action: (1) violations of resident's rights under the New Jersey Nursing Home Act, *see* N.J.S.A. § 30:13 *et seq.*, (2) negligent care and treatment, (3) medical malpractice, (4) negligence, (5) gross negligence and wrongful death. Plaintiffs also seek punitive damages based on Defendants' alleged negligent conduct.

3.  On July 7, 2022, Defendants removed the actions under 28 U.S.C. §§ 1441 and 1442, primarily asserting that Plaintiffs' claims were preempted by the Public Readiness and Emergency Preparedness ("PREP") Act, and secondarily asserting that Defendants are entitled to litigate in this federal forum as "federal officers" or the equivalent. (ECF No. 1.)

4.  As background, the PREP Act protects certain covered individuals—such as pharmacies and drug manufacturers—from lawsuits during a public-health emergency. The PREP Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ("HHS"). If the Secretary deems a health threat a public-health emergency, he may publish a declaration in the Federal Register recommending certain "covered countermeasures." *Id.* § 247d-6d(b)(1). When the Secretary makes such a declaration, the covered individuals become immune from suit and liability from claims related to the administration of a covered countermeasure. *Id.* § 247d-6d(a)(1). In March 2020, the

Secretary issued a declaration under the PREP Act, declaring that COVID-19 is a public-health emergency. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020). The Secretary recommended a series of covered countermeasures that includes drugs, devices, and products "used to treat, diagnose, cure, prevent, or mitigate COVID-19," subject to the PREP Act's definitions. *Id.* at 15,202. A covered person enjoys immunity from all claims arising under federal or state law that relate to the use of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(1). Covered persons include manufacturers, distributors, program planners, and qualified persons, as well as their officials, agents, and employees. 85 Fed. Reg. at 15,201. Indeed, the scope of immunity is broad. Covered persons are immune from "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). However, those injured by covered countermeasures are not without recourse. The PREP Act establishes a fund to compensate "eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(a).

5.   That said, there is one exception to this statutory immunity. The PREP Act provides "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). Willful misconduct under the PREP Act is a "stringent standard." *Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 561 (E.D. Pa. 2021), *appeal dismissed*, 22-7005, 2022 WL 4280691 (D.C. Cir. Sept. 14, 2022). A plaintiff must show "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it

highly probable that the harm will outweigh the benefit." *Id.* § 247d-6d(c)(1)(A). The PREP Act clarifies that willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B). In addition, a plaintiff claiming "willful misconduct" under the PREP Act must first exhaust administrative remedies, and only thereafter may the plaintiff file an action in the United States District Court for the District of Columbia. 42 U.S.C. §§ 247d-6d(d)(1).

6.      Here, Defendants removed this case on the basis that federal question jurisdiction exists under 28 U.S.C. § 1331, because the PREP Act completely preempts all of Plaintiffs' claims. In certain circumstances, the preemptive force of federal law can completely preempt state-law causes of action. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–65 (1987). According to the Supreme Court, complete preemption exists when the force of federal law is so powerful that it displaces any state-law cause of action and leaves room only for federal law for purposes of the "well-pleaded complaint" rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003). When this occurs, the claim "even if pleaded in terms of state law, is in reality based on federal law," and is thus removable as arising under federal law. *Id.* at 8. "[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable…." *Id.* at 9 n.5.

7.      On August 5, 2022, Plaintiffs filed the present Motion to Remand. (ECF No. 6.)

**LEGAL STANDARD**

8.      Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter. *Entrekin v. Fisher*

4

*Scientific, Inc.*, 146 F. Supp. 2d 594, 603-04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)-

(b)). Indeed, the statute provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action
> brought in a State court of which the district courts of the United States have
> original jurisdiction, may be removed by the defendant or the defendants,
> to the district court of the United States for the district and division
> embracing the place where such action is pending.

28 U.S.C. § 1441(a). Furthermore, remand is governed by 28 U.S.C. § 1447(c), which

states that whenever subject-matter jurisdiction is absent, the district court must remand

the case to the state court upon either motion or *sua sponte*. 28 U.S.C. § 1447(c) ("If at any

time before final judgment it appears that the district court lacks subject matter jurisdiction,

the case shall be remanded."). To maintain subject matter jurisdiction over a lawsuit, the

Court must either have diversity jurisdiction, 28 U.S.C. § 1332, or federal question

jurisdiction, 28 U.S.C. § 1331. Importantly, the "defendant bears the burden of showing

the appropriateness of removal," and "[t]he Court must also strictly construe the removal

statutes against removal and resolve any doubts in favor of remand." *Entrekin*, 146 F. Supp.

2d at 604.

## DISCUSSION

9.    On this motion, Plaintiffs argue that the PREP Act cannot serve as a basis for federal

subject matter jurisdiction involving state law negligence claims; in that regard, Plaintiffs

reason that federal officer jurisdiction, in this exact context, has been rejected by the Third

Circuit. Indeed, despite Defendants' contention, Plaintiffs emphasize that the Complaint

sounds only in negligence. Plaintiffs expressly represent that they do not assert any

intentional torts or willful misconduct that would trigger the PREP Act's jurisdictional

exception for willful misconduct.

10.     At the outset, it is critical to note that approximately nine months **prior** to Defendants'

removal of this action, the Third Circuit rejected Defendants' same bases for removal,

including federal preemption under the PREP Act and federal officer removal, in a

factually similar case. In *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp.

3d 518, 521 (D.N.J. 2020), *aff'd sub nom. Maglioli v. All. HC Holdings LLC*, 16 F.4th 393

(3d Cir. 2021), a case that also involved Defendants, the district court addressed whether

the PREP Act completely preempts state law claims related to the spread and treatment of

COVID-19. *Id*. There, the plaintiffs were residents or patients at the defendants' nursing

care facilities and died while in the defendants' care, allegedly as the result of the

defendants' "failure to exercise due care with respect to coronavirus infections." *Id.*

Specifically, the plaintiffs alleged that the defendants failed to " 'take the proper steps to

protect the residents and/or patients at their facilities from the Covid-19 virus' "; provide a

sufficient number of masks to their employees; monitor outside visitors, food preparation

and distribution, employees, and residents; implement " 'proper protocols and procedures'

"; provide PPE; and " 'properly execute existing protocols and procedures set in place to

prevent the spread of the COVID-19 virus.' " *Id.* at 522-23. The defendants removed the

cases to federal court, arguing that the PREP Act preempted the state law claims for

negligence, wrongful death, and medical malpractice. *Id.* at 523-24. In granting the

plaintiffs' motion to remand, the district court observed that "[n]othing in the language of

the [PREP] Act suggests that it was intended to more broadly displace state-law causes of

action for, *e.g.*, malpractice or substandard care—even if proper care possibly would have

entailed administration of [covered] countermeasures." *Id.* at 529. The district court also

observed that the PREP Act, as extended by the Secretary's declarations, "does not, by its

plain terms, cover more generally the care received by patients in healthcare facilities." *Id.*

at 531. The district court therefore concluded that the plaintiffs' claims did not fall within

the scope of the PREP Act:

> Suppose, for example, a facility was threatened with or subjected to an outbreak of COVID-19 and the physicians in charge made a decision to do nothing. In the broadest sense, this decision would relate to countermeasures, in the sense that it embodied a decision not to employ them. Assuming that such a decision lay outside the realm of reasonable medical judgments, it could give rise to a malpractice claim. And such a malpractice claim would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them.
>
> ....
>
> Here, ... the complaints do not allege that Plaintiffs' injuries arose from, *e.g.*, Defendants' administration to them of vaccines or medicines (or for that matter protective gear)—activities that the PREP Act promotes by affording immunity.... Plaintiffs are claiming (inter alia) that the Defendants committed negligence in that, among other things, they failed to take countermeasures, some of them allegedly federally required.... Plaintiffs thus assert that—because of those failures and other, see infra—the quality of the care they received fell short of what a nursing home facility should have done to protect them from infection by the coronavirus. Such claims concerning the quality of care do not fall within the scope of the PREP Act.

*Id.* at 531.

11. On appeal, the Third Circuit affirmed the district court's decision. Indeed, with respect to

federal officer removal, the Third Circuit noted that:

> the nursing homes here do not assist or help carry out the duties of a federal superior. They are not government contractors. *See Papp*, 842 F.3d at 812–13. They do not have the close relationship with the federal government that we recognized in the nonprofit community defenders. They are not delegated federal authority, nor do they provide a service that the federal government would otherwise provide.

*Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 405 (3d Cir. 2021). Further, as for the

defendants' argument that complete federal preemption of the plaintiffs' claims

warranted removal to federal court, the Third Circuit held that the PREP Act did not completely pre-empt state law negligence claims and that the PREP Act only provided exclusive federal jurisdiction for the tort of "willful misconduct," which by definition, excluded claims sounding in negligence or recklessness. *Id.* at 401, 410-411. The Third Circuit noted that "[j]ust because the PREP Act creates an exclusive federal cause of action does not mean it completely preempts the [plaintiffs'] state-law claims." *Id.* at 410. Rather, "[t]o remove to federal court, the nursing homes also must show that the state-law claims fall within the scope of the exclusive federal cause of action. In other words, [the court] must determine whether the [plaintiffs] could have brought their claims under the PREP Act's cause of action for willful misconduct." *Id.* In that regard, the Third Circuit confirmed the district court's finding that the plaintiffs had alleged negligence, not willful misconduct. Specifically, the Third Circuit explained that nowhere in the plaintiffs' complaints did the estates allege or imply that the nursing homes acted "intentionally to achieve a wrongful purpose," nor did they claim that the nursing homes acted" knowingly without legal or factual justification." *Id.* at 411 (citing 42 U.S.C. § 247d-6d(c)(1)(A)(i) and (ii)). While the Third Circuit acknowledged that the plaintiffs sought punitive damages, it found that was insufficient to bring the case under the umbrella of the PREP Act. Finally, the Third Circuit rejected the defendants' argument that the PREP Act is a significant federal issue that passes the *Grable* test. *Id.* at 413 (citing *Grable & Sons, Metal Prods., Inc., v. Darue Eng'g & MFG,* 545 U.S. 308 (2005)). Indeed, the Third Circuit found the defendants failed to satisfy the first step because a PREP Act preemption defense is not "necessarily raised" by a well-pleaded, state-law negligence complaint. *Id.*

12.   Turning to the instant motion, Defendants' bases for removal are identical to those claimed in *Maglioli*, *i.e.*, federal preemption, federal officer removal doctrine, and the *Grable* test. First, as to the federal officer removal doctrine and the *Grable* test, this Court follows the binding precedent established by the Third Circuit in *Maglioli*, and therefore, removal is not appropriate on either of those two bases. *See also Le Carre v. All. HC 11 LLC*, 21-20226, 2022 WL 2805639, at *3 (D.N.J. July 18, 2022) (granting the plaintiffs' motion to remand based on the binding precedent set forth in *Maglioli*); *Pasquale Iannuzzelli, v. Alliance HC 11 LLC, et al.*, 22-4473, 2022 WL 16822575, at *4 (D.N.J. Nov. 8, 2022) (same).

13.   Finally, as for Defendants' contention that *Maglioli* is distinguishable from this case because, unlike the complaint in *Maglioli*, Plaintiffs' Complaint alleges willful misconduct, the Court disagrees. Defendants argue that a claim for willful misconduct can be inferred or implied from certain allegations of the Complaint.[1] For example, Defendants highlight the following allegations in support of their position:

- "Defendants were negligent, grossly negligent, flagrant, willful, wanton, reckless, malicious and/or intentional in breaching the duty they owed to JOHN." (Compl., Second Count, ¶ 4.)

- "ANDOVER SUBACUTE II's, willful and/or reckless failures in connection with its management and operation of its countermeasure program and facility." (Compl., Fourth Count, ¶ 9.)

- The harm which can be caused to a nursing home resident, like JOHN, by a longterm care facility, like ANDOVER SUBACUTE II's, willful and/or reckless failures to purchase, provide, maintain, and/or monitor the numbers of PPE available to staff, is great, and such failures rise to the level of a conscious disregard for the health and safety of others. (Compl., Fourth Count, ¶ 15.)

---

[1]   The Court notes that Defendants do not provide any examples of willful misconduct claims asserted under the PREP Act—let alone any asserted in the context of nursing homes and the COVID-19 pandemic.

- Defendants "willfully" failed to utilize their resources and consciously chose not to purchase, provide, and/or monitor the numbers of PPE available." (Compl., Fourth Count ¶ 17.)

However, despite Defendants' position, the Complaint unambiguously asserts five claims—all sounding in negligence: (1) violations of the New Jersey Nursing Home Act, (2) medical malpractice and professional negligence, (3) negligence, (4) gross negligence, and (5) wrongful death. Notably, the Complaint does not assert a claim for "willful misconduct," nor do Plaintiffs represent any differently in their briefing. In fact, Plaintiffs' briefing confirms that they wish to assert only negligence claims. Further, to the extent that Defendants concentrate on Plaintiffs' claim for gross negligence as evidence of willful misconduct, it is well established that "[a]lthough gross negligence is something more than inattention or mistaken judgment, it does not require willful or wanton misconduct or recklessness." *Steinberg, v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 364 (2016) (rejecting the description of gross negligence as the equivalent of willful conduct). Indeed, "scattershot references to intentional conduct are a far cry from meeting the high burden Congress set for PREP Act plaintiffs." *Le Carre*, 21-20226, 2022 WL 2805639, at *3. Merely "[a]dding conclusory adverbs to allegations does not morph a negligence action into one for willful misconduct." *Id.* Because the allegations in the Complaint would not support a claim for willful misconduct as defined by the PREP Act, the Court finds that the PREP Act does not preempt the Complaint's state law claims.

Accordingly, for the reasons set forth herein and for good cause shown,

**IT IS** on this 16th day of November, 2022,

**ORDERED** that Plaintiffs' Motion to Remand is **GRANTED**, and this matter is remanded to the Superior Court of New Jersey, Ocean County, Law Division.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

11